Elise R. Sanguinetti (CSB #191389)
elise@asstlawyers.com
Alfredo Torrijos, Esq. (CSB #222458)
alfredo@asstlawyers.com
**ARIAS SANGUINETTI STAHLE & TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, CA 90045
Tel: (310) 844-9696
Fax: (310) 861-0168


Jay A. Urban (*Pro Hac Vice* to be submitted)
jurban@wisconsininjury.com
**URBAN & TAYLOR S.C.**
4701 North Port Washington Road
Milwaukee, WI 53212
Tel: (414) 906-1700
Fax: (414) 906-5333
*Attorneys for Plaintiff*
*and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

| | |
|---|---|
| JOHN STRINGER, individually and on Behalf of all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br><br>COMBE, INC.; COMBE PRODUCTS, INC.; COMBE LABORATORIES, INC.; and COMBE INTERNATIONAL, LTD.,<br><br>      Defendants. | Case No. 17-CV-03192-WHO<br><br>**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date:  October 18, 2017<br>Time:  2:00 P.M.<br>Place:  Courtroom 2<br>Judge:  Honorable William H. Orrick<br><br>Action Filed:  June 5, 2014 |

1   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2       For the reasons stated in Plaintiff's Memorandum (below), Plaintiff's oppose Defendants'

3   Combe et al. Motion to Dismiss.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT……………………………………………...5

II.    INTRODUCTION…………………………………….……………..…...…5

III.   Motion to Dismiss Standard…………………………………………..….…8

IV.    Discussion……………………………………………………………………9

    A.  Defendants' Brief Mischaracterizes Mr. Stringer's And The Class Section 1981 Claim……………………………………………………..…………9

    B.  Mr. Stringer's Section 1981 Claims Are Viable And Meet All Legal Standards………………………………………………………………...11

        1.  Plaintiff has properly alleged activities protected by 42 U.S.C. § 1981………………………………………………………...12

        2.  Plaintiff's Complaint identifies a series of deliberate acts sufficient to support a prima facie case of intentional discrimination………………15

    C.  Defendant's Request to Strike Plaintiff's Class Allegations Is Premature, Unwarranted, and Should Be Denied…………………………………….19

        1.  Plaintiff's Complaint meets the pleading requirements and the issues raised in Defendants' Motion are better suited for a Motion for Certification of the Class………………………………………...20

        2.  Plaintiff properly plead facts to satisfy all requirements for class certification………………………………………………………22

            a.  Plaintiff's Complaint meets the requirements of Fed. R. Civ. P. 23(a)……………………………………………………..23

            b.  Plaintiff's Complaint meets the requirements of Fed. R. Civ. P. 23(b)(3)…………………………………………………25

    D.  Plaintiff Agrees The Court Can Stay The CLRA And UCL Claims Only……26

V.     CONCLUSION……………………………………………………………28

**TABLE OF AUTHORITIES**

**Cases**

*Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130 (9th Cir. 2000) .......................................... 14
*Baas v. Dollar Tree Stores. Inc.*, 2007 WL 2462150 (N.D. Cal. Aug. 29, 2007) ...................... 21
*Bagley v. Ameritech Corp.,* 250 F.3d 518 (7th Cir. 2000) ............................................ 15
*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ............................................... 8
*Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4 Dist. 832 (October 14, 1999) .......................... 14
*Brazil v. Dell Inc.,* 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) ................................ 21, 22
*Brown v. Phillip Morris, Inc.,* 50 F.3d 789 (3rd Cir. 2001) .......................................... 17
*Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405 (C.D. Cal. 2005) ............................ 20
*Colo. River Water Conservation Dist.,* 424 U.S. 800 (1976) ........................................... 27
*Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137 (N.D. Cal. 2004) ..................................... 23
*Ferrill v. Parker Group, Inc.,* 168 F.3d 468 (11th Cir. 1999) .................................... 17, 19
*Garrett v. Tandy Corp.,* 295 F.3d 94, (1st Cir. 2002) ............................................ 13,15
*Gaudin v. Saxon Mortgage Servs., Inc.,* 297 F.R.D. 417, 426 (N.D. Cal. 2013) ......................... 24
*Goodman v. Lukens Steel Co.,* 482 U.S. 656 (1987) .................................................... 19
*Hall v. City of Santa Barbara,* 833 F.2d 1270 (9th Cir. 1986) ......................................... 8
*Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001) .......................... 12, 15
*Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir.1998) .......................................... 23,25
*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992) ........................................... 24
*Holman v. Experian Info. Solutions, Inc.*, 2012 WL 1496203 (N.D. Cal. Apr. 27, 2012) ......... 22
*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ..................................... 25
*In re Wal-Mart Stores, Inc.*, 505 F .Supp. 2d 609 (N.D. Cal. 2007) ............................... 21,22
*Kazemi v. Payless Shoesource Inc.*, 2010 WL 963225 (N.D. Cal. Mar. 16, 2010) ......................... 22
*Kirt v. Fashion Bug #33253, Inc.,* 479 F. Supp. 2d 938 (N.D. Iowa 2007) .............................. 12
*Lee v. City of Los Angeles,* 250 F.3d 668 (9th Cir. 2001) ............................................. 8
*Misra v. Decision One Mortgage Co.*, LLC, 673 F. Supp. 2d 987, 994 (C.D. Cal. 2008) .......... 20
*Morris v. Office Max, Inc.*, 89 F.3d 411, 412, 414 (7th Cir. 1996) ............................... 12,15
*Netbula, LLC v. BindView Development Corp.*, 516 F. Supp. 2d 1137 (N.D. Cal. 2007) .......... 14
*Rivers v. Roadway Exp., Inc.,* 511 US. 298 (1994) .................................................... 13
*Roper v. Edwards,* 814 F.2d 1474 (11th Cir. 1987) .................................................... 19
*Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128 (N.D. Cal. 2010) ...................... 25
*Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293 (9th Cir. 1998) ....................................... 8
*Thorpe v. Abbott Lab, Inc.*, 534 F.Supp.2d 1120 (N.D. Cal. 2008) ................................ 20, 21
*Todd v. Tempur-Sealy Internaional, Inc,* 2016 WL 5746364 (N.D. Cal. Sept. 30, 2016) .......... 24
*Velasquez v. HSBC Fin. Corp.*, 2009 WL 112919 (N.D. Cal. Jan. 16, 2009) ............................. 21
*Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338 (2011) ................................................. 23

**Statutes**
42 U.S.C. § 1981 .............................................................................. 11, 12, 26
California Legal Remedies Act, Cal. Civ. Code ........................................................ 26
Fed. R. Civ. P. 23 .............................................................................. 22, 25
Fed. R. Civ. P. 12(b)(6) .............................................................................. 8

**Other Authorities**
RESTATEMENT (SECOND) OF CONTRACTS § 17 ............................................................... 14

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## PRELIMINARY STATEMENT

This case is only a race discrimination in contract case brought pursuant to 42 U.S.C. Section 1981 ("Section 1981").  It is brought in California on behalf of Mr. John Stringer, the plaintiff, an African American man and a Just For Men® Jet Black consumer.  The allegations only concern the Jet Black product and no other Just For Men® products.  The claims only concern race discrimination both in the stand alone Section 1981 allegations and also as part of the California consumer act allegations. There are no such race allegations under Section 1981 or otherwise in the cases filed in Illinois called the *In Re: Just For Men® Mass Tort Litigation*. There are no such race allegations under Section 1981 or otherwise in the case filed in California called the "San Diego Action" in Defendants' brief. As noted by the defendants, the only Section 1981 claims have been leveled against these defendants in this case and not in those cases.  Plaintiff's cause of action under Section 1981 exactly and concisely identifies a violation of this civil rights law, which prohibits race discrimination in the making and enforcing of contractions.

## INTRODUCTION/STATEMENT OF FACTS

First, and most importantly, this is not just a Just For Men® hair dye case involving all products.  It is a case arising out of the purchase and use of a specific Just For Men® **Jet Black** product case for African-Americans only.  And it is only a case for African-Americans because African-Americans had a Jet Black product targeted toward them by the defendants without any fair and reasonable disclosure about the dangerous and harmful nature of this product. Intended to be used by African-American men, Just for Men® Jet Black hair dye has 17 times more p-Phenylenediamine ("PPD") than Just for Men's lighter color shades. Complaint ¶ 2. PPD is a hazardous substance associated with potentially severe heath risks, ranging from contact dermatitis to anaphylaxis to even death.  *Id.* at ¶¶ 39-48.

5
**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

But, as it turns out, PPD is even more dangerous for Black men because they have a significantly higher sensitization rate to PPD than White men.  *Id.* at ¶¶ 49-52.  This is the most important distinction because the defense is trying to suggest that this case is an attempt to convert a product liability case into a 42 U.S.C. Section 1981 case.  However, it was the defendants' actions in the development, marketing and sale of Jet Black to African-Americans that created this case, all with their full knowledge of the chemical composition of their product and its disproportionate, dangerous effect on African-Americans.

In the face of this, they issued no warnings to African-Americans specifically about these dangers on its Jet Black product versus its other Just for Men® products.  Mr. Stringer has alleged that his right to enter into a point of sale contract that met his reasonable expectations as an African-American consumer has been substantially and significantly compromised by these failures in disclosures by the defendants.  However, there never was a completed contract because the purchasers were not allowed to see it through without harm.  There was no "meeting of the minds" because the users, predominantly Black men, were not allowed to make an informed decision because the dangers were never disclosed in the targeted marketing to the Black population.

This is a product, Jet Black, that is exponentially more dangerous only to African-Americans because the susceptibility to skin harm is multiple times higher and the PPD harmful active ingredient concentration is multiple times higher.  And there is no disclosure of any of this to the consumer.  Plaintiff plead all such facts.  At the motion to dismiss stage these facts are uncontestable.  Jet Black was sold and targeted toward African-Americans without being as safe or safer as it was a lot more dangerous and was the cause of harm.  Plaintiff has alleged a viable case because there never was a viable contract between the purchasers without a "meeting of the minds" because JFM failed to disclose critical points about their product –

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

namely the PPD levels and harm to African-Americans – to allow the consumer to make an informed decision.  Complaint ¶¶ 17-18.

Section 1981 has three prongs.  The first is you must be African-American.  Second, that there is "intentional discrimination" in the contract.  And the third prong is the "impeding or infringing" on the rights under contract.  Plaintiff's Complaint outlines the discrimination. *Id*. at ¶¶ 93-95.  Jet Black was made differently than the other JFM products and thus it was not the same product – Jet Black increased risk of harm to African-Americans only because JFM substantially increased the harmful ingredient.  The lighter shades – all of them – were of decreased risk to White consumer and there was less PPD in all of them.  Nothing could be more clear about a disparate propensity for harm because of the color of one's skin.  *Id*. at ¶¶ 94-96.

So it is the failure to disclose the key information – PPD concentration and risk of harm of that ingredient to African-Americans – and the failure to warn for severe injury to African-Americans that prevented African-American consumers from making a fair and reasonably informed contractual decision to purchase the product.  This is not just a breach of the contract but the failure in the inception of this contract – i.e. there was no viable contract – because of these failures.  JFM is unable to secure the equal performance of the contract that White consumers were afforded by the purchase of other JFM products with fractions of PPD in comparison to its Jet Black product for African-Americans.  There was no viable contract because there was no meeting of the minds on those key terms.  There was no viable contract because there was no enjoyment of the benefit of the bargain – i.e. coloring away the grey – without an expected or intended harm, which was not disclosed.  In other words, African-American consumers were unable to enjoy the Jet Black product in the same or similar was that

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

White consumers were able to enjoy and use their formula products with far less of risk, if any, of harm. *See* Complaint at ¶¶ 96-98.

## MOTION TO DISMISS STANDARD

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) only when plaintiff's allegations "fail to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In evaluating the sufficiency of a complaint's allegations, a court must assume the facts alleged in the complaint to be true unless the allegations are controverted by exhibits attached to the complaint, matters subject to judicial notice, or documents necessarily relied on by the complaint and whose authenticity no party questions. *Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001). A court should not grant dismissal unless the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974, (2007). In addition, "[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Hall v. City of Santa Barbara,* 833 F.2d 1270, 1274 (9th Cir. 1986) (quotation and citation omitted). Moreover, dismissal should be with leave to amend unless it is clear that amendment could not possibly cure the complaint's deficiencies. *Steckman v. Hart Brewing, Inc*., 143 F.3d 1293, 1296 (9th Cir. 1998). As set forth in this brief below, this standard favors the denial of this motion, or, at the very least, a grant of leave for Plaintiff to cure any perceived deficiencies.

Plaintiff has specifically alleged that he purchased Just For Men® hair products in the color Jet Black in reliance upon Defendants' statements that its products were safe and reliable and tested for the African American market that they were marketed and advertised to and that the use of the product caused injury in fact. Second, Plaintiff alleges that he and others suffered bodily harm when they used the products advertised toward black men—in reliance on Combe's representations that the product was safe to use for black men—when it actually

contained a heightened risk of bodily injury when used by black customers both because of susceptibility to harm from PPD and the vastly increased PPD chemical composition of the Jet Black product. See Complaint, ¶¶ 77-78.

## DISCUSSION

### A.  Defendants' Brief Mischaracterizes Stringer's And The Class Section 1981 Claim.

Defendants contend that Mr. Stringer does not meet the requisite profile to be a plaintiff in a Section 1981 action.  Defendants have omitted the key allegations from the Complaint in their briefing.  The Complaint clearly alleges that African Americans as a race are far more susceptible to harm from PPD than other races, that Jet Black is marketed toward African Americans, and that Jet Black contains up to 17 times the amount of PPD than the other Just For Men® products marketed for other races and skin colors.  Defendants targeted African Americans for the sale and use of Jet Black knowing that this product was exponentially more harmful to African Americans than any other consumers. Despite the ultra high levels of PPD, which is the potentially harmful ingredient in all Just For Men® hair dyes, in Jet Black, and this susceptibility for black consumers, Defendants did not issue any warnings to the African American consumer beyond what is set forth in the labels for all of their hair dye products with far lesser PPD levels.  In other words, with 17 times more PPD, there are no additional warnings for African Americans at all.

Plaintiff's Complaint makes allegations that his right to contract was impeded by Defendants.  While he was allowed to purchase the Jet Black product, he was not allowed to enjoy the benefit of this bargain because there was no meeting of the minds on the kind of product that he was purchasing.  This means the contract was not viable in this Section 1981 context because the product was not safe as advertised.  In fact, Defendant Combe marketed and sold a product to African Americans that was completely different because of the PPD

disparity than the products it sold to the white community.  And it was different in the most significant way possible: it created an exponential risk of harm.  Instead, it its brief, Defendants make silly comparisons like Jet Black is available to non-African American consumers or that African Americans could produce lighter shades.  See Defendants' Brief, p. 9.  This type of argument begs the response: Really?  Plaintiff does not believe this court needs to take judicial notice of the fact that the African Americans have black specific hair.[1]  In fact, Defendant has a separate Just For Men® product for white people with dark or black hair that is not Jet Black – it is called Real Black.[2]  Predictably, these products are marketed to different folks.  Why would an African American consumer ever purchase a lighter shade, as suggested in Defendants' argument, when there is a Jet Black hair product specifically for African American hair?  That argument fails all logic, including common sense.  The Stringer Complaint clearly alleges that African Americans were directed to purchase Jet Black and no one else was targeted for that product, this goes right down to the cover of the box with a picture of an African American man on it.

Next, Defendant Combe attempts to articulate an argument that Jet Black as a product did not contain any "racial animus" without defining that term.  Nothing proves something different than science.  Biologically, as stated in the Complaint, African Americans are more susceptible to harm by PPD.  Chemically, as stated in the Complaint, African Americans were provided a product containing 17 times the PPD levels of the lighter shades of other Just For Men® hair dye products.  And when developing and marketing and selling Jet Black,

---

[1] https://en.wikipedia.org/wiki/Black_hair
[2] https://www.amazon.com/s/?ie=UTF8&keywords=just+for+men+real+black&tag=googhydr-20&index=aps&hvadid=153676121177&hvpos=1t1&hvnetw=g&hvrand=17063968824142370512&hvpone=&hvptwo=&hvqmt=e&hvdev=c&hvdvcmdl=&hvlocint=&hvlocphy=9060333&hvtargid=aud-344389568820:kwd-1790889188&ref=pd_sl_6jc22s6rfo_e

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Defendant never discloses the chemistry or biology or the simple, plain fact that its Jet Black product will disproportionally cause greater bodily harm to African Americans.  If that is not animus, which means purpose or intention, then nothing is.[3]  Withholding important information when it comes to things that harm is the same thing as affirmatively inflicting harm.   Defendant absolutely treated African American customers differently in this regard.  To argue otherwise is like making an analogy to a gender situation suggesting that a man could buy tampons at a store just like a woman could.  To argue like this to suggest dismissal of the viable Section 1981 claims by Mr. Stringer on behalf of African Americans, Defendants should at least apply logic.

### B.  Mr. Stringer's Section 1981 Claims Are Viable And Meet All Legal Standards.

Plaintiff John Stringer has brought a civil rights claim pursuant to 42 U.S.C. § 1981. First enacted in 1866, this Reconstruction-era law guaranteed the same rights to all persons within the United States as those rights enjoyed by White citizens.  The right to enter into and enforce contracts was one of the rights specifically enumerated in and protected by the statute.  In 1991, Congress broadened the scope of § 1981, making it clear that the term "make and enforce contracts" not only included the right to form a contract but also the right of "the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship."  See 42 U.S.C. Section 1981 (b).   In the instant action, John Stringer has properly pleaded facts (upon information and belief) to support his claim that as a result of the Combe Defendants' intentionally discriminatory activities, he has been deprived of the benefit of his bargain. Complaint ¶¶ 3, 57-60, 76-85, 100, 104-107.

---

[3] http://www.dictionary.com/browse/animus

To establish a claim under § 1981, a plaintiff must allege facts in support of the following elements:   (1) he is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute.  *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996); *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1101-02 (10th Cir. 2001).  Plaintiff has met this burden.  Specifically, he has properly pled that he is African-American, purchased Just for Men® Jet Black hair dye in May 2016 and was unable to enjoy the benefits of the hair dye due to intentional discrimination by the Defendants.  See Complaint ¶ 81, 84, 97-98.   Plaintiff has also included sufficient factual allegations to support the elements of his § 1981 claim.

**1.  Plaintiff has properly alleged activities protected by 42 U.S.C. § 1981.**

Defendants contend that because Plaintiff completed the purchase of the hair dye, then he cannot demonstrate his contract rights were impaired or impeded by anything the Defendants may have done.  Citing a slough of cases, Defendants essentially argue that Plaintiff can only invoke the protections of § 1981 if Defendants prevented him from actually buying the hair dye.  Defendants' argument, however, is both legally and factually unsound.  "[Section] 1981's prohibition against racial discrimination in the making and enforcement of contracts applies to all phases and incidents of the contractual relationship."  *Kirt v. Fashion Bug #33253, Inc.,* 479 F. Supp. 2d 938, 954 (N.D. Iowa 2007)(*quoting Rivers v. Roadway Exp., Inc.,* 511 US. 298, 302 (1994)).  In the instant action, Plaintiff alleges that (1) his right to enjoy the benefits of his bargain were impeded by Defendants' discriminatory actions and (2) the contract itself was invalidated due to the Defendants' discriminatory actions.

A plaintiff—in order to state a cognizable contract claim under § 1981—is not required to plead that he attempted to enter into a contract and the defendant prevented him from doing so.

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

The protections of § 1981 unquestionably extend well beyond the moment two parties enter into a contract and include plaintiff's right to enjoy the benefits of that contract. *Garrett v. Tandy Corp.,* 295 F.3d 94, 98 (1st Cir. 2002). ("[] Congress widened the interpretative lens when it enacted the Civil Rights Act of 1991. That Act amended section 1981 by expanding the phrase 'make and enforce contracts' to include 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" (internal citations omitted)). "[I]n order to satisfy the § pleading requirements for a suit under section 1981, a retail customer must allege that he was actually denied the ability either to make, perform, enforce, modify, or terminate a contract, or to enjoy the fruits of a contractual relationship, by reason of a race of a race-based animus." *Garrett,* 295 F.3d at 100-102 (emphasis added) (considering whether Plaintiff, who had completed a purchase, was prevented from using the goods he had purchased).

In the instant case, Plaintiff alleges that the Defendants' actions impaired his ability to enjoy the benefits of his purchase; instead of washing away the gray and sporting jet black hair, Plaintiff suffered a "severe physical reaction" that led to blistering, itching, swelling and permanent scarring. *See* Complaint at ¶¶ 85-87. By expressly pleading that he was deprived of the benefit of his bargain, Plaintiff has satisfied the third element for pleading a prima facie case under § 1981. *See* Complaint at ¶¶ 97-98.

Plaintiff's § 1981 claim does not, however, rest solely on his claim that Defendants' actions prevented him from enjoying the fruits of the contract. Contrary to Defendants' declaration that Plaintiff has "not described any action by any defendant that impeded his right to make and enforce contracts," Plaintiff expressly alleges just that. In the third paragraph of his Complaint, Plaintiff alleges that as a result of Defendants' conduct, the parties did not reach a meeting of the minds:

> Defendants' discriminatory and fraudulent business practices prevented Plaintiff from making an informed decision and unfairly diminished his ability to come to a meeting of the minds contractually with the Defendants prior to making his purchase of the Just for Men® products.  The purchase transactions lacked good faith and fair dealing, and as a result Plaintiff sustained severe physical and other injuries.  Plaintiff now seeks damages to make him whole and deter Defendants from engaging in similar intentional, illicit conduct in the future.

Complaint ¶ 3.  Plaintiff reiterates these allegations in his first cause of action.  Id. at ¶¶ 100-101, 104-107.

"Under California law, in order to form a valid and enforceable contract, it is essential that there be (1) parties capable of contracting, (2) their consent, (3) a lawful object; and (4) a sufficient consideration.  *Netbula, LLC v. BindView Development Corp.*, 516 F. Supp. 2d 1137, 1155 (N.D. Cal. 2007).  A manifestation of mutual assent (or meeting of the minds) is also required.  *Binder v. Aetna Life Ins. Co.*, 75 Cal. App. 4 Dist. 832, 849 (October 14, 1999)(citing RESTATEMENT (SECOND) OF CONTRACTS § 17).  Where there has been a misrepresentation as to the character of a proposed contract, the contract is voidable.  *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1137 (9th Cir. 2000)(citing RESTATEMENT (SECOND) OF CONTRACTS § 164(1)(1979)).  In other words, where there have been material omissions and/or misrepresentations, there can be no meeting of the minds, and thus no valid contract.

Defendants cite a number of cases—none of which is analogous to the instant action—to show that because he actually purchased the Just for Men® Jet Black hair dye, Plaintiff cannot bring a § 1981 claim.  The fact pattern for each of these cited cases is essentially the same:  the plaintiff enters the store, is subjected to racial harassment by store employees, and then either makes a purchase or does not try to buy anything at the store.  The courts reasoned that if a plaintiff was able to complete a purchase, then he had not suffered the actual loss of a contract interest.  As for the plaintiffs that made no attempt to make a purchase, their prospective loss of

a contract interest was too speculative and insufficient to state a § 1981 claim.  *See Morris v.
Office Max, Inc*., 89 F.3d 411, 412, 414 (7th Cir. 1996)(plaintiff completed purchase of
telephone message pads and was unable to demonstrate he intended to buy any other
merchandise); *Bagley v. Ameritech Corp.,* 250 F.3d 518, 521 (7th Cir. 2000)(although store
manager refused to assist plaintiff, the store clerk offered to assist the plaintiff; the plaintiff
then opted not to shop at the store); *Hampton v. Dillard Department Stores, Inc.,* 247 F.3d
1091, 1118-1119 (10th Cir. 2001) (security officer preventing plaintiff from redeeming a
coupon for free perfume did not constitute interference with the right to contract because the
coupon was unrelated to a purchase).

Defendants' cases are generally inapplicable to the instant action.  Unlike the plaintiffs in
those cases, Plaintiff John Stringer has not suggested that anyone (including the Defendants)
interfered with or impeded his ability to buy a box of Just for Men® Jet Black hair dye.
Plaintiff John Stringer's claim is that Defendants' actions denied him the benefit of the bargain
and invalided his contract interest.  Furthermore, it is worth noting that one of the cases cited
by the Defendants recognized that the use and ownership of goods without interruption is an
activity protected by § 1981.  *Garrett*, 295 F.3d  at 101-103 (finding police investigation
occurring after plaintiff had already purchased items did not interfere with plaintiff's use and
ownership of those items and "he was not deprived of the benefit of the bargain by subsequent
events").

**2.  Plaintiff's Complaint identifies a series of deliberate acts sufficient to support a
prima facie case of intentional discrimination.**

The foundational pleading requirements for a § 1981 action requires Plaintiff to allege facts
showing the defendant had an intent to discriminate on the basis of race.  Contrary to
Defendant's insistence that Plaintiff has not "alleged any discriminatory act by Defendants, nor

any intent by defendants to discriminate against him because of his race,"  Plaintiff has alleged a series of deliberate actions taken by the Defendants that were based on race and that ultimately impaired Plaintiff's ability to enjoy the benefit of his bargain. The Complaint outlines Defendants' reprehensible business plan of creating a hair dye formula that is supposedly especially suited to African-American men but is actually far more dangerous than the hair dye used by Defendants' White customers.  The Complaint alleges facts sufficient to show both direct evidence of intentional discrimination and circumstantial evidence from which intentional discrimination may be reasonably inferred.

Intended to be used by African-American men, Just for Men® Jet Black hair dye has 17 times more p-Phenylenediamine ("PPD") than Just for Men's lighter color shades. *See* Complaint at ¶ 2.  PPD is a hazardous substance associated with potentially severe health risks, ranging from contact dermatitis to anaphylaxis to even death.  *Id*. at ¶¶ 39-48.  But, as it turns out, PPD is even more dangerous for Black men because they have a significantly higher sensitization rate to PPD than White men.  *Id.* at ¶¶ 49-52.  Defendants' Jet Black is a triple whammy for African-American consumers like Plaintiff John Stringer:  knowing that African-American men are already more vulnerable to PPD than White men, the Defendants heedlessly add 17 extra helpings of PPD to the Jet Black formula and then aggressively market Jet Black to the African-American community.  In short, the Defendants knowingly and intentionally sell a hair dye purportedly designed for Black men but is far more dangerous than the hair dye it sells to White men.  *Id.* at ¶¶ 59-79.  Worse yet, despite (or perhaps because of) knowing that its target market has greater susceptibility to PPD, Defendants have chosen not to disclose to or warn their target market that there is a greater concentration of PPD in its Jet Black hair dye or that African-American men have a greater susceptibility to adverse effects of PPD.

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiff alleges that Just for Men® created "Jet Black"—a hair dye that is specially formulated just for African-American men. Complaint ¶¶ 53-64. This is different treatment based on race. Direct evidence of disparate treatment based on race is sufficient to make out a prima facie case of intentional discrimination. *See Ferrill v. Parker Group, Inc.,* 168 F.3d 468, 472 (11th Cir. 1999)( "[D]irect evidence of disparate treatment on the basis of race makes out a prima facie case of intentional discrimination."). Plaintiff has also alleged actions by the defendant that would allow a fact finder to infer discriminatory intent. For example, Defendants are aware that their "Jet Black" market is almost exclusively African-American. Complaint ¶ 55. They have performed product testing and conducted market surveillance studies, which would also confirm the "Jet Black" market is almost exclusively African-American. *Id.* at ¶¶ 56-58. One of the more compelling pieces of circumstantial evidence is Defendants' Jet Black marketing strategy to target African-Americans. *Id.* at ¶¶ 65-79. From the formula to the name to the packaging to the product spokesmen—it is all geared to entice African-American men and it all smacks of disparate treatment, racial discrimination and even racial exploitation.

To be clear, Plaintiff is not alleging that Defendants' targeted marketing of African-Americans violates 42 U.S.C. § 1981. In *Brown v. Phillip Morris, Inc.,* the Third Circuit definitively concluded that targeted marketing of African-Americans does not in and of itself impair African-American consumers' contract rights. 250 F.3d 789, 797-801 (3rd Cir. 2001). A group of African-American smokers brought a § 1981 claim against Phillip Morris alleging its practice of marketing mentholated tobacco to African-Americans deprived them of contract rights. Both the district court and appellate court agreed that "Black Smokers' allegations of racially targeted marketing of mentholated tobacco products cannot, *in the absence of any disparity between the products sold to African-Americans and the products sold to others*, constitute a deprivation of contract … rights actionable under § 1981." *Id.* at 794 (emphasis

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

added).  The court's analysis was based primarily on the fact that the plaintiffs had not alleged that the mentholated tobacco products sold to African-Americans differed from those sold to Whites.  <u>The court warned, however, that if Phillip Morris had not been selling an identical product to both Black and White consumers, then such activity could fall within § 1981 protections</u>.  The court also noted that "if racially directed marketing of menthol cigarettes resulted in a situation in which virtually all mentholated tobacco products were consumed by African-Americans and substantially all non-mentholated tobacco products by others," then that too could fall within the protections of § 1981.

Unlike *Phillip Morris*, the hair dye sold to African-American consumers and White consumers is not the same.  The Jet Black formula has up to 17 times more PPD than the other formulas sold by Defendants.  This fact alone makes it a different and much more dangerous product to any consumer that uses it.  But because African-Americans are especially vulnerable to PPD, the product is especially dangerous to the very consumers being targeted.   And, unlike Phillip Morris, Defendants have created a situation in which virtually all the Jet Black users are African-Americans while the formulas with less PPD are used by others.  Complaint ¶¶ 56-58.  These allegations are sufficient to establish circumstantial, if not direct, evidence of discriminatory intent.

The *Phillip Morris* court also acknowledged there is authority suggesting a §1981 claim is cognizable where a consumer is sold a defective product on the basis of his race.  250 F.33 at 798 (*citing Roper v. Edwards,* 814 F.2d 1474 (11th Cir. 1987)(casket manufacturer sold "seconds" to African-American customers).  That is precisely the situation articulated in Plaintiff's complaint:  Just for Men has intentionally designed a product to be used almost exclusively by African-American consumers.  This is disparate treatment.  Because the product contains substantially more PPD than Just for Men's other formulas, Defendants are exposing

18

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

African-American users to more danger than their White consumers; this fact alone is sufficient evidence of disparate treatment.  The fact that Defendants exclusively market Jet Black to the African-American community is evidence of Defendants' intent to treat African-American consumers differently.  The result of this disparate treatment?  Unsuspecting consumers like John Stringer buy a box of hair dye in the hopes of washing away some gray hair and wind up with permanent scarring instead.  They have not received the benefit of the bargain they thought they were entering (using a product fit for ordinary and particular purposes); they have received a defective product.

Finally, Defendants contend Plaintiff's § 1981 claim must be dismissed because he has alleged no facts showing racial animus.  Again, Defendants are legally and factually mistaken.  First, "racial animus" is not required to establish a prima facie claim of § 1981.  First, the absence of racial animus does not preclude a finding of intentional race discrimination under § 1981.  *Ferrill v. Parker Group, Inc.,* 168 F.3d 468, 472-473 (11th Cir. 1999)("The crucial issue then is whether a defendant who acts with no racial animus but [acts] on the basis of race can be held liable for international discrimination under § 1981. Clearly, the answer is yes.")(*citing Goodman v. Lukens Steel Co.,* 482 U.S. 656 (1987)).  Second, the facts alleged by Plaintiff are more than sufficient to support a finding of ill will or racial animus.  Defendants have deliberately subjected their African-American customers, who are nearly five times more likely to suffer adverse reactions to PPD than White customers, to excessive amounts of PPD without even so much as a warning.  Certainly such blatant and callous disregard for the health of Plaintiff John Stringer and others supports a finding of racial animus and award of punitive damage.

**C.   Defendant's Request to Strike Plaintiff's Class Allegations Is Premature, Unwarranted, and Should Be Denied.**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**1.   Plaintiff's complaint meets the pleading requirements and the issues raised in Defendants' Motion are better suited for a Motion for Certification of the Class.**

Defendant seeks to strike Plaintiff's class allegations pursuant to Rule 12(f), arguing that Plaintiff has not met his burden to show that any purported class member is entitled to relief.  According to Defendant, Plaintiff is required – at the pleading stage – to assert facts that the putative class members have suffered any injury similar to his alleged injury or that Defendant was engaged in any pattern and practice of wrongful acts.  Ostensibly Defendant's position, which seeks to turn Rule 23 on its head, finds no support in the law and should be rejected.

Attempts to dispose of class allegations at the pleading stage are disfavored and rarely granted. *Clark v. State Farm Mut. Auto. Ins. Co.*, 231 F.R.D. 405, 407 (C.D. Cal. 2005) (denying motion to strike for "stricken for insufficiently pleading the required elements of [Rule 23(a),]" because motion was premature and finding conclusory class action allegations sufficient at pleading stage); *Misra v. Decision One Mortgage Co.*, LLC, 673 F. Supp. 2d 987, 994 (C.D. Cal. 2008) (denying motion to strike and holding that "there is little, if any, authority in the Ninth Circuit or its district courts to support striking the Rule 23 class claim at this stage of the litigation in a motion to strike."); *Thorpe v. Abbott Lab, Inc.*, 534 F.Supp.2d 1120, 1125 (N.D. Cal. 2008) ("[m]otions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for the arguments ...."). In fact, even where courts have expressed serious concerns about the propriety of a class action, they have still refused to address class certification at the pleading stage, reasoning that discovery and a fully briefed record are necessary to make an informed decision on class certification. *See Velasquez v. HSBC Fin. Corp.*, 2009 WL 112919, at *4 (N.D. Cal. Jan. 16, 2009); *Brazil v. Dell Inc.*, 2008 WL 4912050, at *4 (N.D. Cal. Nov. 14, 2008).

"Motions to strike class allegations are disfavored because a motion for class certification is a more appropriate vehicle for the arguments." *Thorpe, supra*, 534 F. Supp. 2d at 1125; *see also, Baas v. Dollar Tree Stores. Inc*., 2007 WL 2462150, at *3 (N.D. Cal. Aug. 29, 2007) (denying defendant's motion to strike as premature, and noting that "[c]ourts generally 'review class allegations through a motion for class certification'"). The logic underlying this rationale is manifest since in most circumstances it would be inequitable to permit class certification issues to be decided before the plaintiff has had opportunity to conduct discovery. "[T]he better course is to deny such a motion because the shape and form of a class action evolves only through the process of discovery." *In re Wal-Mart Stores, Inc*., 505 F .Supp.2d 609, 615-616 (N.D. Cal. 2007) (denying motion to strike class allegations and holding that "[w]hile plaintiffs' class definitions are suspicious and may in fact be improper, plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery"); *see also, Brazil v. Dell Inc., supra*, 2008 WL 4912050 at *3 ("Discovery helps parties clarify the legal issues and factual predicates of the class action, and thus dismissal at the pleading stage is unusual.").

The basis that Defendant forwards for dismissal of Plaintiff's class allegations serves only to highlight to impropriety of dismissing Plaintiff's class allegations at the pleadings stage. This is "not the rare case where the pleadings indicate that the class requirements cannot possibly be met." *Kazemi v. Payless Shoesource Inc*., 2010 WL 963225, at *2 (N.D. Cal. Mar. 16, 2010). Instead, Defendant is merely arguing that Plaintiff has not alleged facts in his Complaint establishing that a class should be certified. That determination, however, can only properly be made on a motion for class certification – not at the pleadings stage.

This argument lacks any merit. The requirement proposed by Defendant (that the class definition be defined in terms of liability) would result in a "fail-safe" class definition. "Fail-

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

safe" class definitions (wherein membership in the class is based on the determination of the legal right to recovery) are prohibited. *Brazil v. Dell Inc.,* 585 F. Supp. 2d 1158, 1167 (N.D. Cal. 2008) (class defined as including persons who purchased computers that "Dell falsely advertised" not permissible); *In re Wal-Mart Stores, Inc., supra,* 505 F.Supp.2d at 615 (the definition of a "Vacation Subclass" of people who had not received "full and complete" compensation would involve a legal determination based on the facts relevant to an individual potential class member).

Even if Plaintiff's class definition was somehow overbroad, however, the issue should be decided on Plaintiff's motion for class certification. After the benefit of discovery, Plaintiff – and even the Court – can always amend the class definition so as to narrow it. *Holman v. Experian Info. Solutions, Inc.*, 2012 WL 1496203, at *8 (N.D. Cal. Apr. 27, 2012) ("District courts are permitted to limit or modify class definitions to provide the necessary precision.") Here, Plaintiff's class allegations are more than sufficient and Defendant's motion should be denied.

## 2. Plaintiff properly plead facts to satisfy all requirements for class certification.

Furthermore, Plaintiff's class allegations meet the requirements under Fed. R. Civ. P. 23(a). The requirements of class treatment are: (1) the class is so numerous that joinder of all members is impracticable; (2) common questions of law or fact exist across the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interest of the class. Fed. R. Civ. P. 23(a). Plaintiff also must conform with Rule 23. Rule 23(b) states, "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

a.  <u>Plaintiff's Complaint meets the requirements of Fed. R. Civ. P. 23(a).</u>

Plaintiff's Complaint shows describes numerous injured Class members as Plaintiff is informed and believes that there are thousands of African American males who have purchased and sustained physical injury and as a result, damages after using Just For Men Jet Black.

Defendants' motion alleges that Plaintiff failed to meet the commonality requirement pointing to potential alleged differences between members of the Classes. However, Defendant's attempt to alter this requirement to require Classes members to show numerous instances of common law or fact fails. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 369 (2011) (internal citations omitted) ("indeed, '[e]ven a single question of law or fact common to the members of the class will satisfy the commonality requirement,'"); *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1020 (9th Cir.1998).  Moreover, differences between members of the Class do not derail the commonality of the Class.  *See Dukes v. Wal-Mart Stores, Inc.*, 222 F.R.D. 137, 145 (N.D. Cal. 2004) ("Specifically, plaintiffs may demonstrate commonality by showing that class members have shared legal issues but divergent facts or that they share a common core of facts but base their claims for relief on different legal theories.").

Plaintiff's claim on behalf of the class come down to the same contention. *Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011) ("claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor." Here, the common contention is clear—Defendants engaged in a common course of conduct in targeting marketing of Just For Men Jet Black to African American males resulting in severe injury to members of the Classes, while hiding the harmful effects of PPD, knowledge that PPD sensitization rates are higher for African Americans, and that Jet Black exposed consumers to a significantly greater amount of PPD and risk of severe physical injury. Complaint ¶ 92.

Plaintiff also meets the typicality requirement of Rule 23(a). Typicality between Plaintiff and the Classes members is shown by looking to whether Plaintiff shares a common injury with the Classes members and whether all Class members have been injured by the same course of conduct.  *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992) ("representative claims are "typical" if they are reasonably co-extensive with those of absent class members; *they need not be substantially identical*"); (emphasis added); *see also Gaudin v. Saxon Mortgage Servs., Inc.,* 297 F.R.D. 417, 426 (N.D. Cal. 2013). ("[T]ypicality is primarily an inquiry into alignment of interest rather than an investigation into the forms of relief for which the named plaintiff has prayed"); *Todd v. Tempur-Sealy Internaional, Inc,* 2016 WL 5746364, *3 (N.D. Cal. Sept. 30, 2016).

As stated in Plaintiff's complaint and throughout this discussion, Plaintiff was injured and discriminated against by the same targeted conduct that Plaintiff alleges herein to have harmed the both Plaintiff and the Classes. Plaintiff and the members of the Class are all African American males who purchased, used, and were injured by the Jet Black color shade and the significantly higher amount of PPD in the shade. Defendants' wrongful and discriminatory conduct as alleged herein affected Plaintiff and the Classes in substantially the same manner. Complaint ¶ 93.

Looking to the adequacy requirement, Plaintiff represents all Classes members—all suffering from a PPD based reaction. Adequacy is addressed with two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chyrsler Corp.,* 150F.3d 1011, 1020 (9th Cir. 1998); *In re Mego Fin. Corp. Sec. Litig*., 213 F.3d 454, 462 (9th Cir. 2000). All Class members fell victim to the same targeting marketing scheme, marketing the Jet Black shade to African American males, while

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

at the same time concealing the significantly higher amount of PPD in Jet Black.  Complaint ¶ 93. As stated in his Complaint, Plaintiff intends to prosecute this vigorously to the benefit of the Classes. Plaintiff and Plaintiff's counsel will fairly and adequately protect and advocate the interest of all members of the Classes and no conflicts of interest exist with any other members of the Classes. Complaint ¶ 94.

     b.  <u>Plaintiff's Complaint meets the requirements of Fed. R. Civ. P. 23(b)(3).</u>

     Combe Defendants' contention that Plaintiff cannot show that "the questions of law or fact common to class members predominate over any questions affecting only individual members" Fed. R. Civ. P. 23(b)(3) also fails. Pursuant to Rule 23(b), a class action may be maintained when common questions of law or fact of the class members predominate over any questions affecting individuals, and a class action is superior means to fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

     Combe Defendants cite to *Sterns* to support its contention that personal injury claims are not appropriate for class actions.  First, looking to ascertainability, the proposed class in *Sterns* could potentially include individuals without injury. *Stearns v. Select Comfort Retail Corp.,* 763 F. Supp. 2d 1128, 1152 (N.D. Cal. 2010). Second, in *Sterns*, Defendants pointed to the differing claims of property damages as an indication that individual issues predominated the issues of all members of the class, noting that named Plaintiffs had to replace property in addition to the Sleep Number® bed. *Id*. Here, Plaintiff posed two Classes in which all members suffered physical injuries from the heightened levels of PPD in Just For Men Jet Black as a result of the same course of targeted marketing by Defendants. The extreme variation of damages shown in *Sterns* does not exist here.

     As described in Plaintiff's Complaint, members of the Classes have common questions of law and fact that predominate over any individual issues—all members of the Classes were

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

victims of the same targeting marketing scheme, marketing the Jet Black shade to African American males, while at the same time concealing the significantly higher amount of PPD in Jet Black, resulting in severe physical injury and damages to each member. Complaint ¶ 92. Similarly, Plaintiff pleads violations of California Legal Remedies Act, Cal. Civ. Code §§ 1770(a)(5) and (a)(7) and California Legal Remedies Act, Cal. Civ. Code §§ 1770(a)(5) and (a)(7), and common relief on behalf of all members of the Classes.

For these reasons, at this stage of the proceedings, the court should not dismiss any class action allegations and rather allow the claims to proceed with discovery and ultimately class certification briefings as set forth in Rule 23. In the alternative, the plaintiff requests an opportunity for leave to amend this action based upon these motions and going forward with the claims as set forth above and as set forth below.

**D.**      **Plaintiff Agrees The Court Can Stay The CLRA And UCL Claims Only.**

Defendants have asked this court to take judicial notice of the case and pleadings, which it is termed the "San Diego Action." That case, unlike this case, makes no allegations regarding claims of race whatsoever especially not any claims involving 42 U.S.C. Section 1981 which is the heart of this action. However, the San Diego Action does make claims under the CLRA and UCL California Consumer acts for multiple Just For Men® products including but not limited to the Jet Black product that is part of this action. Having reviewed the San Diego Action as well as the defendants' briefing on the CLRA and UCL, Plaintiff does not object to a stay of those claims. Plaintiff does not agree or concede that the Section 1981 claims should be stayed or barred or otherwise limited in any way due to the San Diego Action.

Plaintiff's Complaint specifically carves out an action under CLRA and UCL for the Jet Black product only. These are the claims that have been plead particularly as developed in the Complaint and also as set forth in the Section 1981 and class action briefing above. Any claims

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

that this plaintiff, Mr. Stringer, would be making individually and as part of a class would be centered on the race discrimination issues as stated.

Further, as set forth above, the Complaint and this briefing describe the fraud level claims involving the deceptive practices of the defendants target marketing the Jet Black product to African-Americans without disclosing the harmful effects of PPD both to African-Americans as a chemical and also due to the much higher concentration of the PPD in the Jet Black product.  We will not restate those points at length.  It is because of those allegations that the Plaintiff has met his burden at this stage in showing deception and cause of harm.  The economic harm alleged by the plaintiff includes not only the purchase of a product that harmed rather than helped as its intended purpose, which rendered the expense for the product wasted money, but also the economic harm of having to seek medical attention and missing time from work and other matters.  However, the plaintiffs will agree at this stage of the proceedings to stay the action under the CLRA and UCL given the consumer claims brought under these laws as part of the San Diego Action.

That said, the Plaintiff does not agree that under the *Colo. River Water Conservation Dist.,* 424 U.S. 800 (1976), doctrine because this action does not meet the six prong test.  First, this case brings race discrimination claims under Section 1981 and those claims have not been plead or joined in the San Diego Action.  Second, the forums are not of issue as conceded by the defendants.  Third, this action cannot be considered "piecemeal" with respect to that case because the facts and allegations are not the same actionable law.  Fourth, while that action is a bit longer on file, that complaint was only amended recently and there has been no showing that the issues litigated are joined or proceeding duplicative of what would be brought in this case.  Fifth, as clearly stated in both actions, the only state claims brought in San Diego are CLRA and UCL claims which are state law claims; here, the plaintiff has alleged Federal law

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

under Section 1981, which further mitigates against any stay of those claims. And sixth, since those claims are state claims, that proceeding is inadequate to protect Mr. Springer's and those similarly situated rights under Section 1981 for race discrimination.

Therefore, since the San Diego Action is not "substantially similar" to the Section 1981 claims, and the plaintiff has agreed to a stay of the CLRA and UCL claims even though the claims plead in the Stringer action are different (i.e. this Complaint is based upon PPD levels in Jet Black and there are no such claims in the other case), there should not be a stay of this Federal litigation pursuant to *Colorado River.*

## **CONCLUSION**

This action is not *Parker* and the *Office Max* and other shopping harassment cases. Plaintiff John Stringer is not complaining that the Combe Defendants harassed him while he was shopping for hair dye.  Nor is this action *Brown v. Phillip Morris, Inc*.  Plaintiff Stringer is not complaining simply because the Combe Defendants are targeting the African-American community in its marketing efforts.  Defendants ignore the plain facts of the plaintiff's Complaint: John Stringer has brought this civil rights action because the Combe Defendants have targeted African-American consumers with a product that is different and far more dangerous than the comparable product Combe sells to its White customers.

Target marketed to only African-American men, Just for Men® Jet Black hair dye has 17 times more ("PPD") than Just for Men's lightest color shades.   PPD is an extremely hazardous substance associated with potentially severe heath risks, ranging from contact dermatitis to anaphylaxis to even death. PPD is most dangerous for Black men because they have a significantly higher sensitization rate to PPD than White men. Combe's Jet Black is a multiple threat for African-American consumers:  this PPD is far more harmful to Black men than White men, but Combe adds 17 times the PPD to Jet Black, and then directly markets Jet

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Black to the African-American consumer.  In sum, Combe intentionally and knowingly sells this product to Black men when it's far dangerous than the product it sells to White men. Incomprehensibly, Defendants Combe has obviously chosen not to share or fairly warn its target customer that there is a greater concentration of PPD in its Jet Black shade or that African-American men have a greater susceptibility to adverse effects of PPD.

In its Motion to Dismiss, Combe does not attempt to deny or justify its use of a chemical that is inherently more dangerous for a Black man than a White man.  Nor does Combe deny that its Jet Black formula—intended to be used by Black men—has 17 times more of that dangerous chemical.  Tacitly conceding that it targeted men like John Stringer, Combe contends instead that Plaintiff has failed to allege his right to contract was impeded or that Combe engaged in disparate treatment based on race. A review of the Complaint, however, shows that Plaintiff has included allegations outlining Combe's intentional conduct and resulting impact on Plaintiff's contract rights.

The class action status of this case at this juncture is not subject to grounds for dismissal for the reasons stated herein.

Further, while the plaintiff concedes a stay would be appropriate for the CLRA and UCL state claims for consumer law, the Section 1981 Federal claims which serve as the basis for this action by Mr. Stringer and those similarly situated, are not part of that San Diego Action and thus any stay of the Section 1981 case here would be improper.

Why should Black people be allowed to suffer exponentially disproportionate harm knowingly – from intended chemistry by the company – without fair warning?  Consider the defense motion: They are asking this court to ignore the biological nature of the Jet Black product chemistry and to deny a fair discovery and hearing of the discrimination alleged in the Plaintiff's Complaint.

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Dated: September 18, 2017.                 Respectfully Submitted,



_____
Elise R. Sanguinetti (CSB #191389)
elise@asstlawyers.com
Alfredo Torrijos, Esq. (CSB #222458)
alfredo@asstlawyers.com
**ARIAS SANGUINETTI STAHLE &
TORRIJOS, LLP**
6701 Center Drive West, 14th Floor
Los Angeles, CA 90045
Tel: (310) 844-9696
Fax: (310) 861-0168

Jay A. Urban (*Pro Hac Vice* to be
submitted)
jurban@wisconsininjury.com
**URBAN & TAYLOR S.C.**
4701 North Port Washington Road
Milwaukee, WI 53212
Tel: (414) 906-1700
Fax: (414) 906-5333
*Attorneys for Plaintiff and the
Proposed Class*

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**PLAINTIFFS' RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**