UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN STRINGER,<br><br>        Plaintiff,<br><br>    v.<br><br>COMBE, INC., et al.,<br><br>        Defendants. | Case No. 17-cv-03192-WHO<br><br>**ORDER GRANTING MOTION TO DISMISS AND STAYING CLAIMS**<br><br>Re: Dkt. No. 13 & 14 |

**INTRODUCTION**

The primary issue addressed in this Order is whether plaintiff John Stringer is able to state a cause of action for violation of 42 U.S.C. § 1981, which guarantees that all persons shall have the same rights to make and enforce contracts as white citizens. Stringer, an African American, purchased Just For Men Mustache and Beard kit in the Jet Black color shade and, after applying the product, suffered a severe physical reaction that required emergency medical treatment. He contends that (i) Just for Men Jet Black color shade products contain 17 times more of the chemical compound, p-Phenylenediamine (PPD), than the lighter shade products, (ii) PPD is a "hazardous" chemical that is designated as a "strong sensitizer," (iii) African Americans males are five times more sensitized to PPD than other races and (iv) despite those facts, the Jet Black color products were marketed to African Americans.[1] He brings a class action against defendants[2] on behalf of similarly situated African American males who "purchased, used, and were injured" by Just For Men Jet Black color shade products.

---

[1] Stringer also states claims for violation of California Consumers Legal Remedies Act (CLRA) and California's Unfair Competition Law (UCL).

[2] The defendants are Combe, Inc., Combe Products, Inc., Combe Laboratories, Inc. and Combe International Ltd. (collectively Combe).

Stringer's Section 1981 claim fails because he has not alleged that Jet Black color shade products are exclusively sold or marketed to African Americans or sold to them on different terms than to other ethnic groups. As explained below, I GRANT defendants' motion to dismiss the Section 1981 claim with leave to amend. I will STAY his two state law claims, as there is a pending class action in state court in San Diego involving them, and DENY defendants' motion to strike the class allegations as moot.

**BACKGROUND**

**I. FACTUAL BACKGROUND**

Stringer purchased and used Just For Men Mustache and Beard kit in Jet Black on September 28, 2016. Compl. [Dkt. No. 1] ¶¶ 77, 80. Although he had used Jet Black color shade products many times previously, on September 28, 2016, he suffered a severe physical reaction and required emergency medical treatment and medication on October 1, 2016. *Id*. ¶¶ 83-84.

Stringer alleges that Combe uses different amounts of PPD in the various shades of their hair dye products with the Jet Black shade containing 17 times more PPD than lighter color shades. *Id*. ¶ 51. Tests and consumer reports known by Combe allegedly show sensitization and adverse reactions by African American males, but Stringer alleges that Combe worked to conceal the problems associated with the Jet Black color in the African American community. *Id*. ¶¶ 53-54. While the risks of an adverse reaction was five times higher in African American males than compared to their white counterparts, Combe failed to warn consumers about the potential severe risks due to the higher levels of PPD in order to induce the purchase and use of the product in the African American community. *Id*. ¶¶ 56, 58, 59.

Combe marketed the Jet Black color shade to African American males through a series of targeted ads, including using prominent African American sports legends to promote the product. *Id*. ¶¶ 61, 66, 68. After media and Consumer Affairs reported sensitization and potentially severe injury to users, Combe continued to market those products to African American males. *Id*. ¶ 72. Stringer alleges that Combe's intentional marketing to induce and mislead African American males is discriminatory, fraudulent, unfair, and unlawful. *Id*. ¶ 75.

## II. PROCEDURAL BACKGROUND

On June 5, 2017, Stringer filed this class action case, asserting claims under § 1981, the CLRA, and the UCL. In early 2016, a number of nationwide class action and mass tort cases were filed against Combe relating to the use of PPD in Just For Men products. Mot. [Dkt. No. 13] at 1. The cases were consolidated under the name *In Re: Just For Men Mass Tort Litigation* and are pending in the Southern District of Illinois. *Id.* In addition, on November 10, 2016, another class action against Combe over its use of PPD was filed in the San Diego County Superior Court (*Wisely v. Combe Incorporated et al.*, the "San Diego Action"). The San Diego Action alleges violations of the CLRA, violations of the UCL, and violations of California Commercial Code § 2-314 (Breach of Implied Warranty) for injuries sustained from PPD in Just For Men products in all colors. Declaration of Katherine F. Murray [Dkt. No. 16] ¶ 2 and Exh. B. That Action alleges that Combe concealed the known risks of PPD including scarring, allergic reaction, anaphylactic shock, and skin depigmentation to induce consumers to purchase the products. *Id.* ¶¶ 31, 35.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A claim is facially plausible when the plaintiff pleads facts that "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id*. While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555, 570.

In deciding whether the plaintiff has stated a claim upon which relief can be granted, the court accepts the plaintiff's allegations as true and draws all reasonable inferences in favor of the plaintiff. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). However, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir.

2008).

Federal Rule of Civil Procedure 12(f) provides that a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The function of a motion to strike under Rule 12(f) is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing of those issues before trial. *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994) (citation omitted). Motions to strike "are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice." *Rosales v. Citibank*, 133 F. Supp. 2d 1177, 1180 (N.D. Cal. 2001).

## DISCUSSION

### I. MOTION TO DISMISS

Defendants move to dismiss Stringer's three causes of action for violation of 42 U.S.C. § 1981, the California Consumer Legal Remedies Act, and the California Unfair Competition Law. Because, as discussed below, Stringer agrees that the CLRA and UCL claims should be stayed pending resolution of the San Diego Action, I will address only the sufficiency of the Section 1981 claim.

Section 1981 prohibits discrimination in the making and enforcement of contracts by reason of race, including color or national origin differences. 42 U.S.C. § 1981. "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.*; *see also Flores v. City of Westminster*, 873 F. 3d 739, 752 (9th Cir. 2017). To state a claim under Section 1981: (1) the plaintiff must be a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerns one of the activities enumerated in the statute which includes the right to make and enforce contracts. *Brown v. Philip Morris Inc.*, 250 F. 3d 789, 797 (3d Cir. 2001); *see also Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1145 (9th Cir. 2006) (plaintiff must prove, in denial of services by a commercial establishment case under § 1981, "(1) it is a member of a protected class, (2) it attempted to contract for certain services, and (3) it was denied the right to contract for those

4

services.").

Combe argues that Stringer has not alleged and cannot plausibly allege a violation of his right to make or enforce contracts nor Combe's intent to discriminate. *Gen. Bldg. Contractors Ass'n, Inc. v. Pennsylvania*, 458 U.S. 375, 389 (1982) ("§ 1981 reaches only purposeful discrimination"). As for the right to make and enforce contracts, Combe relies on *Morris v. Office Max, Inc.*, *Hampton v. Dillard Dep't Stores, Inc.*, and *Garrett v. Tandy Corp.* all of which discuss the denial of services at retail establishments based on a customer's race.

In *Morris*, after purchasing some items, two African American shoppers were stopped and questioned by a police officer called by the manager of Office Max, who reported that the shoppers were behaving suspiciously. *Morris v. Office Max, Inc.*, 89 F. 3d 411 (7th Cir. 1996). The shoppers brought a Section 1981 action claiming that their right to make and enforce a contract was denied. The court held that they could not show that they were unable to form a contract since the store did not ask them to leave, did not deny entrance, nor deny service. *Id.* at 414. Combe argues, as in *Morris*, that Stringer was not denied the right to make a purchase and therefore not denied the right to make and enforce a contract. Mot. at 8.

In *Hampton*, the definition of contract focused on a free fragrance sample coupon that was given after a purchase was made. *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001). The Court of Appeals held that if the coupon was given after a purchase was made, then the coupon was a benefit of the contract and a security guard interfering with the redeeming of that coupon for race based reasons violated Section 1981. *Id.* at 1099. Combe contends that, unlike in *Hampton*, here there was no contractual interference whatsoever. Mot. at 8.

Both Combe and Stringer cite *Garrett* for different arguments. In *Garrett*, an African American customer entered a Radio Shack store looking to purchase a police scanner. Three white employees monitored his movements throughout the store. *Garrett v. Tandy Corp.*, 295 F.3d 94, 96 (1st Cir. 2002). Garrett was informed that the store did not have any police scanners available, and he found a few other items to purchase. *Id.* At checkout, Garrett was asked for and provided his name and address (as the store manager called around to see if another store had a scanner). *Id.* After Garrett left the store, the manager noticed a laptop missing and called police

5

to report the theft, giving the officer the name and address of Garrett. *Id.* The officer investigated at the home of Garrett and did not find the laptop. *Id.*

Garrett called Radio Shack to complain and later filed a Section 1981 claim. *Id.* at 97. The First Circuit considered whether Garrett was denied the ability to make or enforce a contract, expressly acknowledging the 1991 Congressional amendments to Section 1981 that expanded "the phrase 'make and enforce contracts' to include 'the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.'" *Id.* at 98. The court held that Garrett could not make a Section 1981 claim for being surveilled while in the store based on his race. *Id.* at 101. As for the police call and search after the purchase, those events occurred after the purchase was complete and Garrett was at home; there was no Section 1981 violation because Garrett's contract with Radio Shack was complete and he was not denied any benefit of the bargain. *Id.* at 102-103.[3]

Combe argues from *Garrett* that there is no Section 1981 violation where a customer has completed his purchase. Reply [Dkt. No. 33] at 5. As Combe notes, "[n]either *Garrett* nor any other case . . . allows a plaintiff to bring a claim under Section 1981 based on the assertion that he purchased a product that was especially disappointing to members of a certain race." *Id.* Stringer relies on *Garrett* to assert that Section 1981's protections extend beyond a purchase at the register, as the *Garrett* court recognized that Congress expanded the phrase "make and enforce contracts" to specifically include the enjoyment and benefit of the contractual relationship. Oppo. at 13. Stringer argues that he could not enjoy the benefits of his purchase that are guaranteed by Section 1981 because of the dangerousness of the product and the harm he suffered. *Id.*[4] Stringer also contends that his contract interest was invalidated since the benefit of the bargain was denied – because he was intentionally sold a product that was especially dangerous to him on the basis of

---

[3] The *Garrett* panel considered plaintiff's contention that Section 1981 was violated since he was unable to return his purchases for fear of being reported to police. However, because Garrett never attempted a return, the "theoretical loss of a possible future opportunity to modify the contract" was not at issue. *Id*. at 102.

[4] While Stringer makes this argument, he does not cite any cases allowing a Section 1981 claim based on a theory that the product was not able to be used as stated. *Id.*

6

his race – and, therefore, he has a claim under Section 1981. *Id.* at 15.

None of the cases cited by Stringer, including *Garrett*, stretch the right of contract guaranteed by Section 1981 as far as Stringer posits. In his Complaint, Stringer does not allege that his right to contract was in any was impaired. Nor was his ability to enjoy the benefits of the contract, which logically stretches only to his *purchase* of the product, impaired.

As for the intentional discrimination component of Section 1981, Stringer argues that there is direct and circumstantial evidence to show intentional discrimination. *Id.* at 16. Stringer relies on *Brown v. Philip Morris, Inc.* to argue that a Section 1981 claim *may* be available when a person is sold a defective product because of his race. 250 F.3d at 798; Oppo. at 18. In *Philip Morris*, African American smokers alleged Philip Morris marketed specially designed mentholated tobacco products to the African American community. *Philip Morris*, 250 F.3d at 794. The mentholated tobacco products posed greater health risks than non-mentholated tobacco products, which Philip Morris knew yet continued to target the products to the African American community without warning them of the increased health risks. *Id.* at 795. The court held, however, that because the plaintiffs were never deprived of the right to contract for or purchase the mentholated tobacco products, they could not allege a Section 1981 claim. *Id.* at 797. In addition, there was no allegation that Philip Morris dealt differently with customers depending on their race. The sale price for mentholated tobacco was the same no matter the race of the customer. *Id.*

Stringer leans on the court's dicta that "[o]ne might argue that if racially directed marketing of menthol cigarettes resulted in a situation in which virtually all mentholated tobacco products were consumed by African-Americans and substantially all non-mentholated tobacco products by others, that case might come within the sweep of *Roper*." In that Eleventh Circuit case on which Stringer also relies, a white customer purchased a defective burial vault that was allegedly intended to be sold only to African American customers. *Roper v. Edwards*, 815 F.2d 1474 (11th Cir. 1987). The court recognized that based on the allegations – that defendants intentionally marketed and sold defective vaults to African Americans – a Section 1981 claim could be stated, even though the Ropers were white, unintended victims of the intentional discrimination. *Id*. at 1476.

Stringer argues that *Philip Morris* and *Roper* acknowledge that a Section 1981 claim is available if a customer is sold a defective product because of their race. Oppo. at 18; Compl. ¶ 51 (Jet Black shade had 17 times greater amount of PPD than the lighter color shades); ¶ 52 (overwhelming majority of customers who purchased and used the Jet Black shade are African American); ¶¶ 54, 72 (in spite of numerous complaints from African American males and liability releases sought by Combe from injured customers, Combe continued marketing the Jet Black shade to African American males). Stringer contends that Combe is aggressively target-marketing the Jet Black shade to the African American community and that the levels of PPD in the shade exposes African Americans, who are more likely to suffer adverse reactions to PPD, to more danger, which is evidence of disparate treatment and intentional discrimination. Oppo. at 18-19; Compl. ¶ 61, 74.

In fact, as Combe argues, *Philip Morris* confirms that Stringer has no Section 1981 claim. Reply at 6. Combe points out that given the allegations that the Jet Black color shade products are "overwhelmingly" but not exclusively or nearly exclusively bought by African Americans and that the marketing is targeted to, but not exclusively targeted to African Americans, Compl. ¶ 52, 61, the only plausible inference is that Jet Black shade products are purchased by and marketed to some extent to other ethnicities. There are also no allegations that the Jet Black shade is sold to African American consumers at the different prices or on different terms than other races. Accordingly, this is the exact situation addressed in *Philip Morris*. If Stringer is able to amend to allege that Jet Black was marketed or sold exclusively to African Americans or that the product was sold to African Americans on different terms than to other ethnic groups, then he might state a Section 1981 claim. As currently alleged, he does not. The Section 1981 claim is DISMISSED with leave to amend.

## II. MOTION TO STAY

Defendants also move to stay the claims in this case under the *Colorado River* doctrine in light of the San Diego Action, which like Stringer's Complaint asserts failure to warn claims under the UCL and CLRA. Mot. to Dismiss at 3, 17-21. The *Colorado River* doctrine is "a form of deference to state court jurisdiction" rather than a form of abstention. *Coopers & Lybrand v.*

8

*Sun-Diamond Growers of CA*, 912 F.2d 1135, 1137 (9th Cir. 1990); *see Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). "Under *Colorado River*, considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, may justify a decision by the district court to stay federal proceedings pending the resolution of concurrent state court proceedings involving the same matter." *Holder v. Holder*, 305 F.3d 854, 867 (9th Cir. 2002) (internal quotation marks and citations omitted).

Stringer argues that while the San Diego Action asserts CLRA and UCL claims based on omission/failure to warn theories, the "heart of this case" is the racial discrimination claim under Section 1981. As a result, this case and the San Diego Action do not involve the "same matter." He nonetheless agrees that for purposes of judicial economy, the CLRA and UCL claims should be stayed here pending resolution of the San Diego Action. He objects to staying the Section 1981 claim.

As noted above, it is questionable whether Stringer will be able to amend to state a viable Section 1981 claim. At a minimum, therefore, Combe's motion to stay is GRANTED as to the CLRA and UCL claims.[5]

### III. MOTION TO STRIKE CLASS ALLEGATIONS

Finally, defendants alternatively move to strike plaintiff's class action allegations, arguing that Stringer has failed to appropriately define the class he seeks to represent and his claims for relief (based on personal injury) are inappropriate for class treatment. However, as the Section 1981 claim has been dismissed and the UCL and CLRA claims stayed, I need not reach the motion to strike and it is DENIED as moot.[6]

---

[5] If Stringer is able to allege an actionable Section 1981 claim, defendants may renew their motion to stay that claim pending the resolution of the San Diego Action and I will address it on the merits at that point.

[6] If Stringer is able to allege an actionable Section 1981 claim, defendants may renew their motion to strike the class allegations associated with that claim, but defendants should be cognizant of the fact that motions to strike class allegations at the pleading stage are often deemed premature. *See, e.g., Juarez v. Citibank, N.A.*, No. 16-CV-01984-WHO, 2016 WL 4547914, at *5 (N.D. Cal. Sept. 1, 2016).

9

## CONCLUSION

The Section 1981 claim is DISMISSED with leave to amend within 20 days of this Order. The CLRA and UCL claims are STAYED pending the resolution of the San Diego action. The motion to strike is DENIED as moot.

**IT IS SO ORDERED.**

Dated: December 21, 2017

William H. Orrick
United States District Judge